Bergan, J. (dissenting).
In approving the bill which, in 1949, for the first time established disability benefits as an extension of workmen’s compensation, Governor Dewey regarded it as progressive legislation “to give”, as the Governor noted, “ men and women * * * the benefits of social insurance against the hazards of sickness and disability not incurred in their employment ” (cf. dissenting opn., Fuld, J., in Matter of Knapp v. Syracuse Univ., 308 N. Y. 274, 278).
A reversal of the decision of the Workmen’s Compensation Board and of the Appellate Division to hold, as a matter of *209 law, the “co-workers” were not “employees” of appellant corporation would bring about the result that, although the appellant regards them as being employees entitled to workmen’s compensation coverage which it provides for injury sustained arising ‘ ‘ in the course of employment ’ ’, they are not “employees” for the additional benefits arising from sickness or injury not directly attributable to the same “ employment
Although there is no exception as to workmen’s compensation itself for 11 volunteers ’ ’, still the basic problem here is whether or not there was employment and that is essentially the same problem in workmen’s compensation and disability benefits.
Indeed, until it permitted its policy to lapse for failure to pay the premium, the appellant corporation itself had recognized the need to cover its “ co-workers ” for disability benefits as well as for workmen’s compensation.
Although it has a considerable income, appellant is a charitable corporation and the critical problem in the case is whether the “ co-workers ” who carry out the corporation’s functions are within the direction of the statute excepting “ volunteers ” from the term “employee”, as defined in subdivision 5 of section 201 of the Workmen’s Compensation Law.
The expression ‘‘ volunteer ’ ’ is not itself defined in the statute or in the rules and regulations promulgated by the Workmen’s Compensation Board. It must be left, then, for such general aids to definition as may be available. The expression [1] ‘ volunteer ’ ’ would usually be thought to embrace, for example, people who give parttime service to a hospital or a church without any remuneration or with entirely incommensurable return. It would usually not be thought to embrace a total subsistency of the worker, especially if the definitive scope of “ wages ” in the statute (Workmen’s Compensation Law, § 201, subd. 12) be read in context.
The appellant itself proffers as a definition of ‘6 volunteer ’ ’ this: ‘ ‘ One who enters into the service of his own free will, one who gives his services without any express or implied promise of remuneration.”
Yet, if this definition be taken, and it seems good enough on its face, the relationship of the volunteers to the corporation as developed in the present record cannot be held as a matter *210 of law to be of such a nature as to be excluded with certainty from the term ‘ ‘ employee ’
It presents, rather, on this record an open question of fact as to just what this highly specialized relation between the corporation and its coworkers means in actual practice squared against the measure and intent of the statute.
If the nature of the relationship is arguable, one way or the other, a decisive point of law is not presented. The difficulties this court is having with the problem and views of the Referee, the Workmen’s Compensation Board and the Appellate Division, all together suggest that the relationship is not so simply and clearly laid out as to be readily susceptible of a certain resolution as a matter of law.
Portions of the majority opinion come extremely close to making a fact judgment, i.e., “ [t]he evidence established that the coworkers at Camphill do not receive subsistence as recompense for . their services, but simply to enable them to carry out their work” (p. 206). The “evidence established” this conclusion in a debatable situation only if a fact-finder accepted it.
It seems fairly close to fact-finding against the tenor of findings by the Referee and the board the other way to say, as the majority does: “ But in the context of this enterprise, as established by the instant record, these are strong indicia that the subsistence is not being given or received as recompense. The subsistence, on all of the factors revealed, is then only a condition for rendering the services and not a bargained consideration or a recompense for them ” (p. 207).
The record is neither as conclusive nor as indisputable as this language would suggest. On the contrary, it is arguable; and this means the basic value judgment on how the parties (the corporation and its volunteers) acted toward each other should be left with the board.
The appellant’s corporate charter, in reciting its nonprofit purpose, makes express provision, nevertheless, for the payment of “ remuneration ” to any employee.
The corporation’s official pamphlet, distributed to the public, states that a part of the ‘‘ current expenses ” is “ the complete upkeep ” of the coworkers.
*211 The implementation of this becomes clear when reference is made to the written agreement with the corporation made by each coworker addressed to 1 ‘ The Officers and Board Members ”, that in “ serving ” as “ a volunteer”, “I * * * expect and will be satisfied to receive the perquisites[1] furnished to co-workers ”.
This expressly expected benefit from “ service ” (the “ perquisites ”) fulfills the usual criteria of an employment contract since nobody contends that total subsistence could not be regarded as compensation, if there be employment, and that which is received is part of the reason for the service.
It gets down, then, to whether the total support given is any part of the basis for the service and it can scarcely be doubted that the term ‘ ‘ expect ’ ’ and the term ' ‘ will be satisfied to receive ” could be treated by the board factually as indicating a true employment relation.
The proof in the record, aside from the documents offered by the corporation, certainly does not take the “ co-workers ” clearly out of an employment relation; rather, it leaves much of the relationship open to the board’s interpretation.
At the hearing before the board panel, after the first Referee’s decision, the board members pressed appellant’s counsel for the actual value in money the coworkers received from total benefits supplied by the corporation. To this, counsel answered: “ If we had to go out and hire people to do the same work we would probably have to pay double.” The expressions “ do the same work ” and “ pay double ” strongly suggest employment.
The testimony of George Kahmar, one of the coworkers, received as typical of the relationship, strongly suggests an employment situation. In discussing with an officer of the corporation the matter of becoming a coworker, he testified he understood that “my needs would be taken care of”.
This, he added, was “ Not in payment”, but it is arguable at least that an arrangement ' ‘ as compensation ’ ’ to take care of a man’s “ needs ” would be quite adequate for many people and hundreds of thousands of workers in industrial employment do not get, or expect, as much.
*212 Mary Ellenquist, another coworker, testified that 1 ‘ in exchange ’ ’ for taking care of seven villagers she was given room and board for her husband and family, free medical care, clothing for herself and her family and money she might want to have for shopping and entertainment.
This kind of arrangement on such facts does not have to be equated as a matter of law to a “ volunteer ’ ’ as that term is commonly understood.
It is instructive to know that other public agencies than the Workmen’s Compensation Board are not entirely satisfied of an absence of the employment relation between the corporation and its coworkers. The Internal Revenue Service made inquiries concerned with tax withholding and taxability and, although an officer testified, “ we explained the circumstances ”, nevertheless, ‘ ‘ we have [had] a very great deal of difficulties in these matters ”. As of the time of this testimony, August 24, 1964, a decision had apparently not been made on the subject of inquiry on “ the status of our people ”, and how they were “paid”.
Although, undoubtedly, the motivation of dedicated service is very high both as to the corporation and the coworkers, this motivation does not alone, as the majority opinion notes, necessarily negative an employment relation within the terms of the statute, i.e., “ low wages or humane motivations ” would not necessarily change employment ‘1 into a voluntary arrangement ”.
When the statutory definition of wages is seen as including, broadly and specifically, the “ reasonable value of board, rent, housing, lodging, or similar advantage ” (Workmen’s Compensation Law, § 201, subd. 12), it is clear that what this corporation gives and the coworkers receive in total maintenance is “ wages ”, perhaps as a matter of law but certainly as an open fact question.
Moreover, the corporation’s financial operation leaves us no ground to hold that the people who help produce its income should be deprived of the protection of the Disability Benefits Law.
For the fiscal year ending September 30, 1963, the corporation’s income from fees paid for the wards cared for by the coworkers and from sales of goods, produced by and under *213 supervision of the coworkers, and contributions amounted to $77,000, of which $35,290 was expended to maintain 10 workers and their families and 19 wards.
The complex arrangement shown by this record, fairly arguable as to being or not being ‘1 employment ’ ’, ought not by treating it as a “ law ’ ’ problem be definitively decided here against coverage.
Consistent with the beneficial social purpose of the statute, paralleling and extending the Workmen’s Compensation Law itself, the court should read its definitions liberally. There seems no'good policy ground, on a narrow reading of a beneficial statute, to overrule the Workmen’s Compensation Board in this case.
The order should be affirmed.
Judges Burke, Scileppi and Jasen concur with Judge Breitel ; Judge Bergan dissents and votes to affirm in a separate opinion in which Chief Judge Fuld and Judge Keating concur.
Order reversed, etc.

. “ Perquisite ” is defined as “A gain or profit incidentally made from employment” (Webster’s New International Dictionary, 2d ed.).